UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

KELLY ANDERSEN,

    Plaintiff,

    v.

THE SCHWAN FOOD COMPANY and DOES 1 through 50, inclusive,

    Defendants.

_____/

No. C 13-2362 PJH

**ORDER GRANTING MOTION TO REMAND**

On July 31, 2013, plaintiff's motion to remand came on for hearing before this court. Plaintiff Kelly Andersen ("plaintiff" or "Andersen") appeared by his counsel Michael C. Righetti. Defendant Schwan Food Company ("defendant" or "Schwan") appeared by its counsel, Alan L. Rupe. Having carefully reviewed the parties' papers and considered the arguments of counsel and the relevant legal authority, and good cause appearing, the court hereby GRANTS Andersen's motion to remand as follows.

**BACKGROUND**

In April 2013, Andersen filed a class action complaint against Schwan in state court, alleging: (1) violation of Labor Code § 1194; (2) violation of Business and Professions Code ("B & P") § 17200, et seq.; (3) failure to provide mandated meal periods and rest breaks; (4) failure to indemnify employees for expenditures and/or losses; (5) failure to make payments within the required time; (6) private attorney general act ("PAGA") penalties; and (7) failure to furnish accurate wage and hour statements.

Andersen pleads that Schwan engaged in a "uniform policy and systematic scheme of wage abuse" against its Route Sales Representatives ("RSRs") in California.

Specifically, Andersen alleges that the scheme involved, among other things, "categorically misclassifying the Route Sales Representatives position as 'exempt' for the purposes of the payment of overtime compensation and minimum wage," denying RSRs meal and rest breaks mandated under California law, failing to indemnify RSRs for business cellular phone expenses, failing to pay former RSRs owed wages within 72 hours of termination, and failing to provide RSRs with timely and accurate wage and hour statements.

Further, Andersen claims in his complaint that "[t]he total damages for the entire case [do] not exceed $5,000,000.00." Compl. at 2. However, on May 24, 2013, Schwan filed a notice of removal pursuant to the Class Action Fairness Act of 2005 ("CAFA") and had the case removed to this court.

On June 25, 2013, Andersen filed the present motion to remand the case back to state court. The parties do not dispute that CAFA's minimal diversity and minimal class size requirements are met. Andersen seeks remand solely on the basis that Schwan has failed to make a sufficient showing that the amount in controversy satisfies the $5,000,000 minimum required by CAFA for federal jurisdiction.

**DISCUSSION**

A.   Legal Standard

"[A]ny civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed by the defendant . . . to the district court of the United States for the district and division embracing the place where such action is pending." Franchise Tax Bd. v. Constr. Laborers Vacation Trust, 463 U.S. 1, 7–8 (1983) (citation omitted). See also 28 U.S.C. § 1441. However, federal courts are courts of limited jurisdiction. See, e.g., Kokkonen v. Guardian Life Ins. Co. of Am., 511 U.S. 375, 377 (1994).

Accordingly, the burden of establishing federal jurisdiction for purposes of removal is on the party seeking removal, and the removal statute is construed strictly against removal jurisdiction. Valdez v. Allstate Ins. Co., 372 F.3d 1115, 1117 (9th Cir. 2004). See also

Gaus v. Miles, Inc., 980 F.2d 564, 566 (9th Cir. 1992). "Federal jurisdiction must be rejected if there is any doubt as to the right of removal in the first instance." Gaus, 980 F.2d at 566.

CAFA provides that district courts have original jurisdiction over any class action in which (1) the amount in controversy exceeds five million dollars, (2) any plaintiff class member is a citizen of a state different from any defendant, (3) the primary defendants are not states, state officials, or other government entities against whom the district court may be foreclosed from ordering relief, and (4) the number of plaintiffs in the class is at least 100. 28 U.S.C. §§ 1332(d)(2), (d)(5). Further, "under CAFA the burden of establishing removal jurisdiction remains, as before, on the proponent of federal jurisdiction." Abrego Abrego v. The Dow Chemical Co., 443 F.3d 676, 685 (9th Cir. 2006).

The Ninth Circuit has held that if it is "unclear or ambiguous from the face of a state-court complaint whether the requisite amount in controversy is pled," a "preponderance of the evidence" standard applies. Guglielmino v. McKee Foods, Inc., 506 F.3d 696, 699 (9th Cir. 2007) (citing Sanchez v. Monumental Life Ins. Co., 102 F.3d 398, 404 (9th Cir. 1996)). Further, the preponderance standard applies where the complaint merely states that "damages" are less than $5,000,000, as attorneys' fees are included in the amount in controversy but are not included in a calculation of damages. See Guglielmino, 506 F.3d at 700 (complaint is silent to amount in controversy when it only claims that "damages" are less than $5,000,000).

B.   Andersen's Motion to Remand

As stated above, the parties' only dispute is whether Schwan has shown, by a preponderance of the evidence, that the $5,000,000 amount in controversy is met.

However, as a threshold issue, the parties disagree over whether Schwan is required to submit summary judgment type evidence to support its opposition to remand. In the Ninth Circuit, "the district court may consider whether it is 'facially apparent' from the complaint that the jurisdictional amount is in controversy. If not, the court may consider

facts in the removal petition, and may 'require parties to submit summary-judgment-type evidence relevant to the amount in controversy at the time of removal.' " Singer v. State Farm Mut. Auto. Ins. Co., 116 F.3d 373, 377 (9th Cir. 1997) (quoting Allen v. R & H Oil & Gas Co., 63 F.3d 1326, 1335-36 (5th Cir. 1995)).

Schwan argues that a removing party, who may produce evidence, is not required to produce evidence to support CAFA jurisdictional requirements. Andersen, on the other hand, argues that evidence is not required to support CAFA jurisdiction in every case, but that it is required in cases, such as this, where the amount in controversy is not "facially apparent" from the complaint.

Both parties cite the same case in support of their argument, Altamirano v. Shaw Indus., Inc., 2013 WL 2950600 (N.D. Cal. June 14, 2013). In Altamirano, the plaintiff argued that in order to meet its burden to demonstrate removability, the defendant was required to submit "summary-judgment-type evidence." Id. at *4. However, the court rejected the notion that "the fact that courts may consider such evidence necessarily requires the removing party to produce it." Id.; see also Jimenez v. Allstate Ins. Co., 2011 WL 65764 (C.D. Cal. Jan.7, 2011) (rejecting argument that defendant must offer summary judgment-type evidence); Gardner v. GC Servs., LP, 2010 WL 2721271 (S.D. Cal. July 6, 2010) ("Contrary to Plaintiff's contentions, however, there is no obligation on Defendant to submit any declarations or 'summary-judgment-type evidence' in support of its assertion that the jurisdictional amount is met in the present case.").

However, this does not mean that "summary-judgment-type evidence is never necessary under this analysis. If, for example, the allegations in the complaint provide no basis for certain assumptions in the calculations, a defendant must provide some evidence rather than relying on mere unsupported speculation or conclusory allegations." Altamirano, 2013 WL 2950600 at *4 (citing Singer, 116 F.3d at 377).

Therefore, Schwan is correct that it is not required to submit evidence to support CAFA jurisdictional requirements. However, the court will reject Schwan's calculations as

4

speculative and conclusory if, in light of the lack of evidence presented, Andersen's complaint provides no basis for the assumptions made.

Having established the type of evidence required to support removal, the court now turns to the specific amount-in-controversy calculations performed by Schwan, and whether they are adequately supported by the complaint or Schwan's declaration.

Schwan argues that it "based [its] calculations on [Andersen's] own statements and documents" and that it did not rely on "conclusory allegations" or "speculation and conjecture." Dkt. 18 at 1. Andersen, on the other hand, claims that Schwan's calculations are based on unsupported assumptions and fail to include necessary information such as "the number of workweeks, work hours, average pay rates, and payroll periods/shifts worked by the putative class." Dkt. 19 at 4.

One of the major disagreements in the present case is whether Schwan is entitled to base its calculations on the assumption that each member of the class will have experienced each of the types of violations listed in the complaint. Schwan argues that it can extrapolate Andersen's claims to the putative class as a whole and assume a 100% violation rate because Anderson alleges that his claims are "typical of the claims of all members of the class." However, Andersen argues that "[t]his type of gambit has been attempted - and rejected - in the past." Dkt. 19 at 4-6 (citing Roth v. Comerica Bank, 799 F.Supp.2d 1107, 1119-1120 (C.D. Cal. 2010)).

District courts in California have disagreed over whether defendants may assume certain variables, such as "average hours of overtime worked per week or the rate of wage statement violations," when calculating the amount in controversy. Roth, 799 F.Supp.2d at 1127. For example, compare Coleman v. Estes Express Lines, Inc., 730 F. Supp. 2d 1141, 1150 (C.D. Cal. 2010) ("Plaintiff included no limitation on the number of violations, and, taking the complaint as true, Defendants could properly calculate the amount in controversy based on a 100% violation rate") with Smith v. Brinker Int'l, Inc., 2010 WL 1838726 at *4 (N.D. Cal. May 5, 2010) ("Defendants have failed to provide any evidence relating to either

5

plaintiff's actual earnings or number of hours worked, asking the court to assume that each plaintiff worked an additional 2.5 hours each day in order to reach the amount-in-controversy threshold").

In Roth, the court surveyed the approaches taken by the different district courts and concluded that "cases allowing defendants to rely on unsupported assumptions of 100% violation rates 'improperly shift the burden to plaintiff to refute speculative assertions of jurisdiction and establish that there is no jurisdiction.' " Altamirano, 2013 WL 2950600 at *5 (citing Roth, 799 F.Supp.2d at 1129).

Courts that have followed the Roth approach have evaluated the defendant's calculations, and the assumptions on which they are based, to determine whether they are reasonable in light of the allegations in the complaint or are unduly speculative. Id. at *6. See also Ruby v. State Farm Gen. Ins. Co., 2010 WL 3069333 (N.D. Cal. Aug. 4, 2010) (conducting claim-by-claim analysis of whether the defendant's assumptions were reasonable); Baillie v. Account Receivable Mgmt. of Fla., 2011 WL 566817 (N.D. Cal. Feb.14, 2011) (analyzing reasonableness of defendant's assumptions in light of allegations in complaint). Therefore, the court will go step by step through assumptions made in defendant's calculations to determine whether they are reasonable in light of the allegations in the complaint.

1. Estimated Overtime Damages

As to the first cause of action, Schwan makes a number of assumptions regarding estimated overtime damages. First, Schwan assumes that Andersen's average estimated hourly wage is a reasonable estimate for the putative class. Second, Schwan assumes that the current number of RSRs, 136, is a reasonable average number of full-time RSRs during a calendar year over the four year relevant time period. Third, Schwan assumes that every member of the putative class worked the same number of overtime hours per week as Andersen. Fourth, Schwan assumes that every RSR worked every single work day over a four year period. All four assumptions are unsupported by the complaint and

are unduly speculative.

First, Andersen's complaint makes no reference to the hourly wage of other employees. It is entirely plausible that different RSRs were compensated at different rates, whether it be because of experience, seniority, or some other factor. Further, it is unlikely that Andersen would be aware of all of his co-workers' hourly wage rates when that information is uniquely within the records of Schwan. In Roth, the court held that it is especially appropriate to require a defendant to provide evidence to justify assumptions when the defendant is in the best position to produce evidence on the question. 799 F.Supp.2d at 1130. Therefore, the assumption that all RSRs were paid the same rate as Andersen is unduly speculative and is not reasonable in light of the allegations in the complaint, particularly given the absence of evidence showing at least the range of pay rates or the median pay rate.

Second, Schwan's assumption that the current number of RSRs is a reasonable estimate of the average number of RSRs employed over the four year class period is unsubstantiated. Nowhere in the complaint does Andersen allege this number, nor is it supported by Schwan's declaration. Although Schwan has provided evidence that there are 611 putative class members and 136 current RSRs, it made an uncorroborated leap when it assumed that 136 RSRs is a reasonable average number of RSRs employed over the four year relevant time period. Dkt. 18-3. Even slightly modifying this assumption can lead to wildly different amount-in-controversy calculations; thus, any calculation that incorporates this assumption is unduly speculative.

Third, Schwan's assumption that all RSRs worked the same number of overtime hours as Andersen is unsupported by the complaint, and similar assumptions have been rejected by courts in the past. In Martinez v. Morgan Stanley, the defendants used the plaintiff's allegations that she worked 12 hours per weekday and approximately 60 hours per week to assume that every associate worked four hours of overtime every day. 2010 WL 3123175 at *5 (S.D. Cal. Aug. 9, 2010). The court flatly rejected this assumption,

stating that, "[a]lthough Plaintiff alleged that her claims are typical of the class as a whole and that class members consistently worked overtime, this does not provide a basis to assume that every class member worked any particular number of overtime hours, much less that he or she worked the same number of overtime hours every workday as Plaintiff did on an unspecified occasion." Id.

Similarly, in Roth, defendants assumed that each class member worked three to five hours of overtime a week because the plaintiff alleged "class member[s] regularly and/or consistently worked in excess of eight (8) hours in a day, in excess of twelve (12) hours in a day, and/or in excess of forty (40) hours in a week." 799 F. Supp. 2d at 1124. The court held that the plaintiff's allegations did not support the defendant's assumption and that, without additional supporting evidence from the defendants, "the court must conclude that defendants' calculation is speculative to the extent it relies on this assumption." Id.

The exact same reasoning expounded in Martinez and Roth applies to the present case. Although Andersen has alleged that his claims are typical of the class, and that class members consistently worked overtime, this is not a basis for assuming that every class member worked any particular number of overtime hours, let alone the four hours of overtime per-day that Andersen alleges that he worked. Although Schwan has included alternate calculations under the assumption that every RSR worked 2 hours of overtime per day, this is still unsupported by any evidence.

Fourth, Schwan's calculation assumes that every single RSR worked every single possible work day over the four year class period. Schwan therefore assumes that not a single RSR took any sick days or vacation days during those four years. There is no basis for this assumption in either the complaint or Schwan's declaration. Thus, this assumption is unduly speculative as well.

Overall, Schwan's estimated overtime damages figure is built upon layer upon layer of assumptions that are unsupported by the complaint or Schwan's declaration. There is no evidence that (1) all employees were compensated at the same hourly wage as

8

Andersen, (2) that the current number of RSRs employed is a reasonable estimate for the average number of RSRs over the four year class period, (3) that every RSR worked two to four hours of overtime per day, and (4) that every RSR worked every possible work day over the four year period. Additionally, both Andersen and Schwan disagree over the formula to calculate overtime wages, further muddying the waters.

However, regardless of the correct formula for calculating overtime wages, the unsupported assumptions listed above make it impossible to calculate or even estimate the correct amount of overtime wages owed to the putative class. Therefore, the court cannot accept Schwan's calculations as to the amount in controversy for the first cause of action.

2.   Meal and Rest Break Violation Damages

Next, Schwan's damage calculations for the third cause of action, meal and rest break violations, are based upon some of the same faulty assumptions discussed above. Schwan assumed that (1) all RSRs were paid the same hourly wage as Andersen, (2) that every RSR worked every day for four straight years, and (3) that the current number of RSRs employed is a reasonable estimate for the average number of RSRs employed over the four year class period. As noted above, all three of these assumptions are unsubstantiated and thus are unduly speculative.

However, as to this cause of action, Schwan's assumption that there was a 100% violation rate is supported by the complaint. Andersen alleges in the complaint that, as a policy, Schwan failed to provide RSRs with the required meal/rest period. Thus it can be assumed that all class members were subject to this policy and are eligible for compensation. However, given the other unsubstantiated assumptions upon which this calculation was based, the court rejects the calculated figure as unduly speculative.

3.   Waiting Time Penalties

Schwan's calculation for the fifth cause of action, waiting time penalties, relies on the unsubstantiated assumption that all RSRs were paid the same wages as Andersen. As discussed above, this assumption is not supported by either Andersen's complaint nor

Schwan's declaration, making it unduly speculative. Therefore, the court will not accept the damages figure calculated by Schwan for this cause of action.

    4.     PAGA Penalties

Andersen's sixth cause of action seeks PAGA penalty damages. Under PAGA, damages are $100, per pay period, for each aggrieved employee. Cal. Lab. Code § 2698(f)(2). Andersen seeks damages on behalf of employees who were not compensated for overtime pay. However, PAGA has a one year statute of limitations. Code of Civ. Pro. § 340(a). According to Schwan's declaration, there are 222 putative class members who are eligible for PAGA penalties. Dkt. 18-3 at 2. Therefore, according to Schwan, PAGA damages are calculated as 222 putative class members x 26 pay periods within the one year statute of limitations x $100 penalty per pay period.

However, this calculation not only relies upon the unsubstantiated assumption that all 222 eligible class members worked during all 26 pay periods, but also directly contradicts an earlier assumption of Schwan's, that there are an average of 136 RSRs working per calendar year. This calculation also fails to account for any of the 222 eligible RSRs leaving the company during the one-year limitations period and therefore not being eligible for PAGA penalties over all 26 pay periods. As a result, this calculation is unduly speculative and is rejected.

    5.     Failure to Provide Itemized Wage Statements

Andersen's seventh cause of action seeks damages for Schwan's failure to provide itemized wage statements pursuant to Cal. Labor Code §§ 226.3 and 558. Damages for these violations are $50 for the initial pay period violation and $100 per subsequent pay period violation, subject to a $4,000 per employee cap. Cal. Lab. Code § 226(e). The statute of limitations for Section 226 is one year. Just as in Schwan's calculations of PAGA penalties, Schwan again assumes that there are 222 eligible class members.

Similar to the faulty assumption in the PAGA penalties calculation, Schwan's assumption that all 222 eligible class members were employed for the entirety of the

statutory period is unsupported by either the complaint or Schwan's declaration. Thus, the court rejects this calculation as overly speculative.

6. Attorneys' Fees

In addition to damages for the causes of action listed in the complaint, Andersen seeks attorneys' fees and costs pursuant to Labor Code §§ 1194, 218.5, 2802, and 226. Where the underlying law provides for the payment of attorneys' fees, the amount of fees is included in calculating the amount in controversy for CAFA jurisdiction. Guglielmino, 506 F.3d at 700 (citing Galt v. Scandinavia, 142 F.3d 1150, 1156 (9th Cir. 1998)). Schwan argues that a reasonable estimate for attorneys' fees is 25 percent of damages. Irrespective of whether 25 percent of damages is a reasonable amount for attorneys' fees in this case, Schwan has failed to provide supported calculations for any of the causes of action in this case. Thus, any calculation of attorneys' fees would necessarily be based upon the unsubstantiated assumptions made by Schwan in its other calculations.

**CONCLUSION**

Ultimately, Schwan has removed this case without first ascertaining whether the amount in controversy exceeds $5,000,000, even though it is in the best position to do so, given that all necessary records are within its control. Allowing Schwan to rely on unsupported assumptions would improperly shift the burden to plaintiff to refute speculative assertions of jurisdiction and to establish that there is no jurisdiction. Therefore, Schwan has failed to meet its burden of proving, by a preponderance of the evidence, that the $5,000,000 amount in controversy is satisfied. Thus, plaintiff's motion to remand is GRANTED.

Finally, the court DENIES Schwan's motion for leave to file a surreply because it finds that Andersen's reply did not raise new issues of law or fact. Accordingly, the court does not rely on the arguments in Schwan's proposed surreply.

The Clerk shall **REMAND** this case to the Alameda County Superior Court.

**IT IS SO ORDERED.**

Dated: August 2, 2013

PHYLLIS J. HAMILTON
United States District Judge